UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| JERRY LEE CRAIG, SR.,<br><br>Plaintiff,<br><br>vs.<br><br>DARIN YOUNG, SOUTH DAKOTA ATTORNEY GENERAL'S OFFICE,<br><br>Respondents. | 1:17-CV-01016-CBK<br><br><br>OPINION AND ORDER |

## INTRODUCTION

Jerry Lee Craig, Sr. filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his September 12, 2013, conviction and 150 year sentence for rape, sexual contact with a minor, and aggravated incest. After conducting an initial consideration of the petition I determined that he had raised claims under the Fifth, Sixth, and Eighth Amendments to the United States Constitution and ordered the respondents to file an answer or other responsive pleading. Respondents filed a motion to dismiss.

## BACKGROUND

The victim of Craig's offenses, age nine at the time of the offenses, and her two younger siblings lived with Craig and his wife in Aberdeen and Presho, South Dakota, episodically when their mother was homeless or otherwise unable to care for them. In May 2012, the children's mother picked up her children from Craig in Presho and drove them to Aberdeen. Craig contends in his papers filed in support of his petition that the mother picked them up because she was concerned that Craig was trying to get custody of the children. The victim testified at trial that her mother picked them up from Presho because the victim called her mother and reported that she was being touched by Craig. The mother reported to the South Dakota Department of Social Services the next day

that, during the trip, the victim reported inappropriate sexual contact with Craig. Six days after the initial disclosure, the victim was interviewed by Colleen Brazil ("Brazil") from Child's Voice, a medical evaluation center that specializes in conducting forensic interviews of children when there is suspected physical or sexual abuse. That interview was recorded by video tape and the video tape became a part of the victim's medical record at Child's Voice, along with the record of the medical checkup performed upon the child after the interview.

Based upon the victim's allegations made during the interview with Brazil, Craig was indicted in August 2012 and charged with first degree rape, sexual contact with a child, and incest.[1] Brazil also interviewed the victim's younger brother six days after the victim was interviewed. The victim's younger brother, age 8 at the time of the interview, claimed Craig had physically abused him and had "raped" him but he could not explain what he meant by "rape." Brazil did not think his report of rape was reliable. No sexual abuse charges were ever filed as to that allegation.

Craig was interviewed by an Aberdeen police officer. He denied the allegations and claimed that the victim made the allegations in retaliation after being caught stealing from Craig. Craig did admit that, on one occasion, he awoke and realized he was touching the victim, mistakenly believing that he was touching his wife.

At trial, the victim, who was by then age 10, testified that Craig put his fingers "down my pants and my underwear and he'd start touching my private parts," that Craig touched her where her "poop comes out," that he stuck his tongue in her vagina, forced her to touch his penis, that he kissed her chest and vagina, that he touched her vagina, and that he touched her bare chest. She denied that he had penetrated her vagina with his finger. The prosecutor did not ask the victim any questions as to date, place, number of times, or any sensory questions. He told the jury in opening statements that he was going

---

[1] Craig was originally charged with one count of first degree rape, three counts of sexual contact with a child under the age of sixteen, and one count of aggravated incest. A second indictment was filed in April 2013, charging Craig with three counts of first degree rape, three counts of sexual contact with a child under the age of sixteen, and one count of aggravated incest, all involving the same victim.

2

to let the victim tell the details through the playing of the video recording of her interview with Child's Voice. The admissibility of the video had already been settled at an evidentiary hearing held prior to trial. Prior to cross examination of the victim, the video of the victim's interview with Brazil was played to the jury. A compact disc containing that interview was admitted into evidence but that exhibit is not part of the record and there is no transcript of that interview in the record for this Court to review. Some of the details that must have been given by the victim in the interview were referred to in the examination of other witnesses and in closing arguments. Following the playing of the victim's interview with Brazil, counsel for defendant then cross-examined the victim about her testimony and about statements she made during the interview.

Brazil testified the day after the victim testified. The prosecution elicited testimony about delayed disclosure of sexual abuse, interview protocol, specific questions that an interviewer asks to determine what a child knows based upon personal experience and what a child knows based upon being told by someone, children's conception of dates and number of times an event occurs, and suggestibility. Brazil also testified that a common reason for inconsistencies between a victim's testimony on the stand and statements made during an interview is the phrasing of the question asked.

Defense sought, both prior to trial and at trial, to question Brazil about the victim's brother's claims. Counsel for defendant argued that such questioning was necessary to support the defense theory that the victim and her siblings were coached by their mother to claim sexual abuse. The brother told Brazil that he had been "raped" but he could not tell Brazil what he meant by rape. The trial court excluded the evidence on several grounds including hearsay. The trial court ruled that the defense had failed to comply with SDCL 19-16-38 (now SDCL 19-19-806(1)) (a South Dakota rule of evidence allowing the admissibility of child hearsay statements regarding sexual abuse under certain circumstances), by failing to give notice so that a hearing could be conducted at which the statement must be shown to be reliable and the child must testify or be shown to be unavailable. The trial court also excluded the proffered evidence based upon lack

3

of relevance, and under Rule 403, finding that any relevance was substantially outweighed by confusion of the jury and the resulting trial within a trial.

The pediatrician who examined the victim following the forensic interview testified that there were no physical findings consistent with abuse and that physical findings were rare in sexually abused children who claim only touching occurred.

One of the investigating officers testified that, upon questioning Craig about the victim's claims, Craig admitted that there had been an instance of accidental contact when he thought he was touching his wife. During the testimony of the investigating officers, counsel for Craig was able to elicit testimony that Craig denied sexually abusing the victim, that Craig claimed that the sexual abuse allegations were made in retaliation after Craig allegedly caught the victim's mother stealing from Craig, and that the victim had been living with many different men during the time she lived with her mother. Counsel elicited testimony that the victim's mother told law enforcement that she was afraid Craig was trying to get custody of her children, that she first contacted social services with a claim that Craig had spanked or otherwise physically abused the children, and that a day or two later she made a report to social services of suspected sexual abuse. Counsel's questions also elicited testimony that no investigation was ever made into Craig's claims that the charges were retaliatory or that some other person may have been the source of the victim's sexual knowledge.

Craig did not testify at trial. Following the presentation of the prosecution's case, the defense rested without putting on any evidence. Outside the presence of the jury, the trial judge asked Craig whether he had discussed his right to testify with counsel and Craig stated that he had. The Court asked Craig whether he understood that it was his decision whether or not to testify and Craig stated it was his own decision and that it was his choice not to testify. Trial counsel thereafter made a record with the court reporter wherein Craig stated that he understood he had a right to testify or not and that he understood the risks of both testifying and not testifying. Counsel stated "And the decision that we made is that you would not be testifying in this case?" to which Craig responded "That is right, I believe our case is made."

4

During deliberations, the jury requested an opportunity to again view portions of the video recording of the victim's interview at Child's Voice. The trial court overruled defense counsel's Confrontation Clause objection and allowed the jury to come into the courtroom and view the video. Only the judge, court reporter, and jury were present. After resuming deliberations the jury sent a second request to view a portion of the video. Without further consulting with counsel, the trial court again brought the jury into the courtroom to view the requested portion. The parties were advised about the second viewing prior to the jury returning to court with their verdicts.

Following conviction, Craig requested the court allow him to fire his court appointed attorney and proceed *pro se* during the sentencing phase. He was allowed to do so after a hearing at which he was given the warning suggested by the United States Supreme Court in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 4 L.Ed.2d 562 (1975). Craig thereafter refused to cooperate with the presentence interview or with the state law mandated psycho-sexual evaluation. An additional hearing was held at which Craig was further warned of the perils of proceeding *pro se* at sentencing.

Based in part upon Craig's failure to accept responsibility for his actions, the trial court sentenced him in July 2013, to three consecutive terms of 50 years on each of three counts of rape and ten years each on three counts of sexual contact with a child and one count of incest, those sentences to run concurrently with the 150 year total sentence on the rape counts. The trial court held that the crimes were "severe" and that the psychological effects on the victim would likely last for her lifetime. The trial court placed emphasis on the fact that the child had been placed in petitioner's care "and instead of protecting the victim, he took advantage of that fact and victimized her." The trial court compared petitioner's case with the sentences imposed in other state cases.

Craig appealed to the South Dakota Supreme Court with the assistance of new counsel. He contended on appeal that the trial court abused its discretion in restricting his questioning of Brazil, that the trial court abused its discretion in allowing him to proceed *pro se* at sentencing because he did not knowingly, intelligently, and voluntarily waive his right to counsel, that his sentence constitutes cruel and unusual punishment, and that

he received ineffective assistance of counsel. The South Dakota Supreme Court affirmed. State v. Craig, 850 NW2d 828 (SD 2014).

Craig argued on appeal that the trial court erred in disallowing his proffered questioning of Brazil concerning the victim's brother's claim that he was "raped" by Craig. Craig sought to elicit testimony that Brazil found such report to be "unreliable." The South Dakota Supreme Court held that the testimony sought from Brazil as to the victim's younger brother was not hearsay since it was offered to show that both the victim and her brother were coached, not for the truth of what the child told Brazil (that he was raped). Thus, any failure of counsel to timely raise a hearsay exception and comply with SDCL 19-16-38 was irrelevant. *Id.* at 833-34. However, the Supreme Court affirmed the trial court's exercise of its discretion in excluding the evidence based upon Rule 403 because "whether one child made an allegation that was substantiated or not does not prove or disprove that another child was or was not abused." State v. Craig, 850 NW2d at 834. The Supreme Court further noted that the proffered testimony would have been improper in any case because Brazil would have been precluded from testifying as to a witness' truthfulness. *Id.*

Craig argued on appeal that the trial court erred in allowing him to proceed without counsel at sentencing. The South Dakota Supreme Court held that Craig had voluntarily, knowingly, and intelligently waived his Sixth Amendment right to counsel after having been provided the "five-factor warning" required by South Dakota Supreme Court precedent. State v. Craig, 850 NW2d at 835-36.

Craig argued on appeal that the trial court failed to comply with state law sentencing requirements, including the requirement that a psycho-sexual assessment be completed and that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment. The South Dakota Supreme Court held that any claim that the trial court lacked adequate information required to sentence the defendant lacked merit because Craig had refused to fully participate in the presentence investigation and evaluation. *Id.* at 837. The Court further found that the trial court did have sufficient information to determine that Craig had not accepted responsibility for his crime and that

his rehabilitation prospects were minimal. *Id.* Finally, the Court held that defendant's sentence was not disproportional to his conduct in repeatedly sexually abusing a relative child placed in his care, characterizing Craig's conduct as "heinous." *Id.*

Finally, Craig raised claims that counsel was ineffective for failing to subpoena the victim's brother and mother (in order to support his claim that the brother lied about and was coached about sexual abuse) and for failing to present evidence attacking the victim's identification of Craig's penis. Apparently one of the details testified to by the victim by way of the playing of the video recording of the interview was the victim's description of the defendant's penis as circular and long and having a point that would stick out at the tip. Following conviction and throughout all post-conviction proceedings, Craig has asserted that counsel was ineffective in failing to present evidence that Craig's penis was circumcised and did not match the description given by the victim. He has suggested that his wife should have been called to testify to that fact.[2] The South Dakota Supreme Court held on direct appeal that such claims were not ripe for review. *Id.* at 839.

Craig filed an application for a writ of habeas corpus pursuant to SDCL 21-27 in June 2015. He raised only claims of ineffective assistance of counsel. The state court appointed counsel and an evidentiary hearing was held. The state court found that all decisions regarding the case were made after conferring with Craig, that counsel's decisions were reasonable trial strategy, that counsel was not deficient, and that Craig was not prejudiced by any decision made by trial counsel. The petition was denied. Both the habeas court and the South Dakota Supreme Court denied a certificate of probable cause. Craig thereafter filed the within petition for a writ of habeas corpus pursuant to 18 U.S.C. § 2254.

---

[2] Following the conclusion of his state court habeas case, Craig went so far as to submit a letter from a fellow inmate and sex offender at the South Dakota State Penitentiary, who described himself as an expert in identifying child predators, describing Craig's penis as small and non-existent and stating in his expert opinion that Craig is actually innocent.

7

# DECISION

## I. STATE LAW CLAIMS.

The federal district courts "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. The United States Supreme Court has "repeatedly held that 'federal habeas corpus relief does not lie for errors of state law.'" Wilson v. Corcoran, 562 U.S. 1, 5, 131 S. Ct. 13, 16, 178 L. Ed. 2d 276 (2010) (*quoting* Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991) (*quoting in turn* Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990))).

Petitioner contends that the prosecutor improperly subpoenaed petitioner's wife as a witness at petitioner's trial. As a possible witness, she was subject to the trial court's sequestration order. She was not actually called as a witness at the trial. Petitioner contends that the prosecutor's action in subpoenaing his wife as a witness deprived him of the ability to show the jury that she was supportive of him by having her sit in the courtroom. He claims that her absence from the courtroom violated his spousal privilege. Petitioner has not raised a cognizable federal habeas claim as to the state trial court's sequestration order.

In any event, petitioner contends that it was his understanding and intent that his attorney was going to call his wife as a witness. She would have been sequestered based upon being on petitioner's witness list notwithstanding whether the prosecution had subpoenaed her.

Petitioner also contends that the trial court judge should have recused based upon a conflict of interest. Petitioner alleges that the trial judge presided over an abuse and neglect proceeding involving the victim in his criminal case. This claim likewise raises no federal constitutional claim cognizable in a federal habeas case.

Petitioner contends that he was sentenced in violation of a state law that requires the completion of a psycho-sexual evaluation prior to sentencing. This claim is not cognizable in a federal habeas proceeding. In any event, the state court files show that

petitioner refused to cooperate in the psycho-sexual evaluation. He cannot claim the trial court erred in sentencing him without a complete evaluation when his actions are the reason the evaluation was not complete. *See* State v. Craig, 850 NW2d at 837 ("Craig's argument that the evaluation lacked necessary information is without merit").

## II. FIFTH AMENDMENT CLAIM

Petitioner contends that the admission of his statement to investigators that he had what he characterized as "innocent contact" with the victim violated his Fifth Amendment rights. He contends that, at the time he made the statement, he was in a sheriff's office and that he asked for counsel at that time.

Petitioner's Fifth Amendment claim is procedurally defaulted. He neither raised it before the trial court, the South Dakota Supreme Court, nor the state habeas court. The United Sates Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982). "The doctrine of procedural default prevents criminal defendants from reviving forfeited claims without a showing of cause and prejudice in order to 'conserve judicial resources and to respect the law's important interest in the finality of judgments.'" Barajas v. United States, 877 F.3d 378, 383 (8th Cir. 2017) (*quoting* Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003)). "Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" Bousley v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 1610, 140 L. Ed. 2d 828 (1998) (*quoting* Reed v. Farley, 512 U.S. 339, 354, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) and Sunal v. Large, 332 U.S. 174, 178, 67 S.Ct. 1588, 1590-1591, 91 L.Ed. 1982 (1947)).

"The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Massaro v. United States, 538 U.S. at 504, 123 S. Ct. 1690.

> Though petitioners seeking habeas relief must fairly present the substance of their claims to the state court to avoid defaulting them,

> a showing of cause and prejudice can excuse a procedural default
> and open the door to our review. Cause typically turns on whether
> some objective circumstance external to the defense impeded
> counsel from raising the claim.

Kennell v. Dormire, 873 F.3d 637, 640 (8th Cir. 2017) (internal citations omitted). Petitioner did not set forth any cause for failure to raise the issue before the state courts.

### III. EIGHTH AMENDMENT CLAIM.

Petitioner contends that his sentence of 150 years for a first offense sex crime violates the Eighth Amendment. Petitioner was convicted of three offenses each having a mandatory minimum sentence of 15 years and a maximum sentence of life imprisonment. The trial court sentenced petitioner to 50 years on each count, to run consecutively to each other. The sentences for four other crimes were imposed to run concurrently.

The United States Supreme Court has held that the "Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" Ewing v. California, 538 U.S. 11, 20, 123 S. Ct. 1179, 1185, 155 L. Ed. 2d 108 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 996-997, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)). *See also*, Solem v. Helm, 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983) (the Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed"). "It is exceedingly rare for an offense that does not have a capital sentence to violate the Eighth Amendment." United States v. Wiest, 596 F.3d 906, 911 (8th Cir. 2010).

Petitioner claims his sentence violates the Eighth Amendment because his crime was a first offense. Petitioner was not sentenced based upon one offense but based upon a course of conduct. His sentence was also based upon his failure to accept any responsibility for his crimes and the resulting limited prospect of rehabilitation. Petitioner was of course not required to admit his guilt at sentencing if he intended to appeal his sentence. Maintaining one's innocence comes at a price, however, as he was not entitled to any leniency accorded those who are remorseful for their offenses.

Petitioner could have received a life sentence without parole for merely one count of rape of a child. Instead, he received a sentence of a term of years for all his conduct. His sentences are the functional equivalent of a life sentence because he will not be parole eligible until he serves 65% of the first 50 year sentence and 75% of the remaining sentences. However, his sentence is not grossly disproportionate to the crimes committed and this is not one of those exceedingly rare circumstances where there is a violation of the Eighth Amendment.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL.

Petitioner contends that he received ineffective assistance of counsel during his state court trial proceedings. To support a claim of ineffective assistance of counsel, a two prong test must be met. "To succeed on this claim, [petitioner] must show ineffective assistance--that counsel's representation fell below an objective standard of reasonableness." Wilcox v. Hopkins, 249 F.3d 720, 722 (8th Cir. 2001) (*quoting* Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Petitioner "must also prove prejudice by demonstrating that absent counsel's errors there is a reasonable probability that the result of the proceeding would have been different." Delgado v. United States, 162 F.3d 981, 982 (8th Cir. 1998), (*citing* Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d (1984)). The burden of establishing ineffective assistance of counsel is on the petitioner. Delgado v. United States, 162 F.3d at 982. Petitioner "'faces a heavy burden' to establish ineffective assistance of counsel." DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000) (*quoting* United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Yarborough v. Gentry, 540 U.S. 1, 8, 124 S. Ct. 1, 6, 157 L. Ed. 2d 1 (2003).

The law applicable to habeas claims under 28 U.S.C. § 2254 is well known. The United States Court of Appeals for the Eighth Circuit has instructed:

> The first filter through which we evaluate claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, the

11

petitioner must show first, "that counsel's performance was deficient," and second, "that the deficient performance prejudiced the defense," in order to establish that counsel was ineffective. Id. at 687, 104 S.Ct. 2052. Because both prongs must be met for the petitioner to succeed, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697, 104 S.Ct. 2052. The prejudice prong of *Strickland* is only met where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. For there to be a reasonable probability that the result would have been different, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (*citing Strickland*, 466 U.S. at 693, 104 S.Ct. 2052). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

We then review the state court's application of *Strickland* under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d), which requires us to defer to the state court's application of *Strickland* to the facts of the case. *See Bell v. Cone*, 535 U.S. 685, 698–99, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); § 2254(d). Thus, we must affirm unless we find that the state reached "a decision that was contrary to or . . . [under] an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of facts," § 2254(d), when it decided that there was not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Under § 2254(d), the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101, 131 S.Ct. 770. Thus, if fairminded jurists could agree with the state court's decision regarding prejudice, we must affirm. *Id.* (*citing Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102, 131 S.Ct. 770 (*citing Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)).

Taylor v. Kelley, 825 F.3d 466, 469–70 (8th Cir. 2016).

> Under *Strickland*, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. The question for this court is not whether "'the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher standard.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009), *quoting Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). A state court "has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123, 129 S.Ct. 1411.

White v. Kelley, 824 F.3d 753, 756–57 (8th Cir. 2016).

Petitioner contends that counsel was ineffective in failing to object to the state trial court's conflict of interest. Petitioner contends that the trial court's bias resulted in the exclusion of evidence that the victim's brother made a non-credible sexual abuse claim which would have bolstered his defense that the children had been coached by their mother. He contends that he should also have been allowed to tell the jury that the children were removed from the custody of their mother and present evidence of the condition of the mother's home. He also contends the trial court's bias resulted in the admission of evidence of his statement to law enforcement. Finally he claims that the trial court's bias resulted in his being sentenced to cruel and unusual punishment when "no evidence exists that proves a crime had even been committed."

Petitioner contends that counsel was ineffective in failing to object to the sequestration of his wife during the trial, in failing to object to the reading of the indictment during the trial, and in failing to object to the prosecution's use of his "mug shot" during closing statements. He contends that there was clear evidence, based upon the foregoing, that counsel colluded with the prosecutor. He claims that the prosecutor tampered with the jury by going into the jury room during deliberations.

The state habeas court held an evidentiary hearing at which trial counsel and the investigator hired by trial counsel to investigate the charges against petitioner testified.

13

The petitioner's wife and son also testified. The state habeas judge found that petitioner was attempting to "retry" the case rather than present evidence of alleged attorney malfeasance.

The state court habeas judge applied the test set forth in Strickland v. Washington. The court concluded that all decisions made by trial counsel were made after conferring with petitioner and were part of reasonable trial strategy. The court held that counsel was not deficient in his performance of investigating and litigating the case. The court further found that petitioner was not prejudiced by any decision made by trial counsel. Therefore, the petition for a writ of habeas corpus was denied.

The state habeas court's decision was not based upon an unreasonable determination of facts nor was it contrary to or an unreasonable application of clearly established law.

Petitioner has, throughout his state and federal post-conviction filings, asserted that he was convicted without proof that he sexually abused the victim. The victim testified that petitioner sexually abused her on more than one occasion, in more than one place, and in more than one particular manner. Such testimony is sufficient to support a conviction. He contends that the trial court's evidentiary rulings were based upon the court's conflict of interest. However, none of the evidentiary rulings have been shown to be contrary to law. I have routinely excluded evidence that some other child was not sexually abused by the defendant on the same basis that the state court excluded such proffered evidence – lack of relevance and confusion of the issues. Finally, petitioner contends that counsel failed to object to routine matters as to the presentation of evidence and the conduct of the trial. Witnesses on both sides are routinely sequestered and, at least until the prosecution rested, petitioner intended to have counsel call his wife as a witness. Indictments containing the charges are routinely read to the jury. Counsel routinely use photos or other evidence during closing arguments. None of petitioner's claims resulted in a probability that the result of the proceeding would have been different." *See* Delgado v. United States, *supra*.

Based upon the foregoing,

IT IS ORDERED that the motion, Doc. 10, to dismiss is granted and the petition for a writ of habeas corpus is denied.

DATED this 20th day of March, 2018.

BY THE COURT:

*Charles B. Kornmann*
CHARLES B. KORNMANN
United States District Judge